# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 21-949V

* * * * * * * * * * * * * * * * * * * * * * * * *
```
                                    *
EMMA FOX,                           *        Chief Special Master Corcoran
                                    *
             Petitioner,            *        Filed:  April 3, 2025
                                    *
      v.                            *
                                    *
SECRETARY OF HEALTH AND             *
HUMAN SERVICES                      *
                                    *
             Respondent.            *
                                    *
```
* * * * * * * * * * * * * * * * * * * * * * * * *

*Ronald C. Homer*, Conway, Homer, P.C., Boston, MA, for Petitioner.

*James C. Daughton*, U.S. Dep't of Justice, Washington, DC, for Petitioner.

## RULING ON ENTITLMENT[1]

On February 19, 2021, Emma Fox filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") after receiving an influenza ("flu") vaccine on September 7, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters ("SPU").

After a full review of the evidence, I find that Petitioner has satisfied all Table requirements for a SIRVA Table injury, and is otherwise entitled to compensation.

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Ruling will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

## I.    Relevant Procedural History

After the case's initiation and SPU assignment, Respondent filed a Rule 4 Report recommending that entitlement to compensation be denied because Petitioner had failed to meet the six-month severity requirement, and 48-hour onset requirement specific to a Table SIRVA injury. Respondent's Report, dated Feb. 9, 2023 (ECF No. 25). I subsequently informed the parties that I intended to issue a fact ruling, and ordered Petitioner to file any additional evidence and a written brief addressing the onset and duration of her SIRVA. *See* Scheduling Order, dated Apr. 26, 2023 (ECF No. 26).

Petitioner filed her brief on June 12, 2023. Petitioner's Brief (ECF No. 29) ("Br."). On February 9, 2023, Respondent filed his opposition. Respondent's Responsive Brief (ECF No. 30) ("Opp."). On August 2, 2023, Petitioner filed a status report reiterating her argument and opting not to file a formal reply. (ECF No. 31). The matter is ripe for resolution.

## II.    Authority

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.*, No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. Section 11(c)(1)(A)(B)(D)(E).

she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time-frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### III.    Relevant Factual Evidence

I have reviewed all evidence filed to date, but limit my discussion below to the evidence most relevant to resolving the issue of onset and determining if Petitioner experienced the seqeula of her injury for more than six months. 42 C.F.R. § 100.3(a)(XIV)(B); Section 11(c)(1)(D)(i).

#### A.  Medical Records

- On September 7, 2018, Petitioner received a flu vaccine in her left deltoid from her primary care provider ("PCP"). Ex. 2 at 27-29.

- Twenty days later (September 27, 2018), Petitioner returned to her PCP with complaints of left arm pain. Ex. 2 at 30. The notes from this visit state that "the arm pain has been gradual and has been occurring in persistent pattern for 1 week." *Id.* The notes also state that Petitioner got a flu shot at her last visit, and "has not been able to move her arm since." *Id.* On exam, Petitioner's range of motion and tenderness to palpation were equal on both sides. *Id.* at 31. She was prescribed oral steroids. *Id.*

- On November 14, 2018, Petitioner went back to her PCP for a left ankle sprain. Ex. 2 at 32. Petitioner made no mention of left shoulder pain during this visit. *Id.*

- Nearly six months passed before Petitioner again sought medical treatment of any kind – and it did not initially involve the alleged SIRVA. On May 10, 2019, Petitioner returned to her PCP for treatment of an upper respiratory infection and to check for anxiety. Ex. 2 at 33-35. She made no mention of left shoulder pain during this visit. *Id.*

- A few days later, however (May 13, 2019), Petitioner visited orthopedist Kelly Murray, M.D., with complaints of left arm pain. Ex. 11 at 3-4. In the Accident/Injury description of Dr. Murray's appointment notes, Petitioner recounted, "I went in to my doctors office to receive a Flu vaccine. After the shot, I had excruciating pain for a little over a week, and was unable to use my left arm entirely. Gradually, the pain got better and my range of motion began to return, but I never fully recovered. I went to my doctor three times to discuss this. They have no idea what is wrong. As of today, I have 3/10 level pain every day depending on my sleeping habit the night before and whether or not I stretch, as well as muscle weakness." *Id.* at 3. The notes also state that "[t]he pain in the left shoulder has been present since receiving the flu shot around August/September 2018. She states that immediately after the immunization, she had excruciating pain and limited motion of her shoulder that prevented her from going to classes. After about a week and a half, the pain lessened, but she has continued to experience a dull ache in the shoulder that is worsened with quick motions of the shoulder and certain lifting activities." *Id*.

- On exam, Petitioner displayed 180 degrees of forward flexion and 100 degrees of external rotation. Ex. 11 at 4. Dr. Murray's impression was "left shoulder RTC injury post flu vaccination vs. left axillary nerve injury," and Petitioner was given a referral for an MRI and EMG study. *Id.* Petitioner was also referred to physical therapy ("PT"). *Id.*

- On May 22, 2019, an MRI of Petitioner's left shoulder revealed moderate to severe infraspinatus tendinosis and small fluid in the subdeltoid/subacromial bursa. Ex. 3 at 21.

- On June 3, 2019, an EMG of Petitioner's left upper extremity yielded normal results. Ex. 3 at 8. That same day, Petitioner presented to pain management specialist Shivani Dua, M.D., with continuing complaints of left shoulder pain that "began on September 7, 2018, after the flu shot." Ex. 2 at 39. Petitioner noted that she was also experiencing numbness in her left arm and hand, and weakness in the left arm and shoulder. *Id.* On exam, Petitioner's range of motion was noted to be full. *Id.* at 40. EMG results were normal, and the MRI identified moderate to severe tendinosis or sprain with a full-thickness tear. *Id.* Dr. Dua opined that Petitioner sustained an infraspinatus tendon strain and referred her to a sports medicine doctor. *Id.*

- On June 10, 2019, Petitioner returned to Dr. Murray for a follow-up visit. Ex. 5 at 6-7. Dr. Murray reviewed Petitioner's recent MRI and opined that there was "evidence of mild tendinosis vs sprain of the infraspinatus with associated bursitis." *Id.* at 8. Dr. Murray elaborated that the weakness in Petitioner's left shoulder "may be coming from tendinosis of the infraspinatus tendon secondary to the flu vaccination being injected into the tendon," or alternatively, a "PTS like syndrome affecting the axillary that may be a bad reaction to the flu vaccine." *Id.* Petitioner was subsequently referred to PT. *Id.*

- On June 21, 2019, Petitioner presented to Premier Orthopedics & Sports Medicine for an initial PT consultation. Ex. 5 at 9. Petitioner reported that she received a flu vaccine in September of 2018 and experienced left shoulder pain "that night." *Id.* Petitioner further reported limited range of motion and decreased strength. *Id.* On exam, Petitioner had 180 degrees of forward flexion and abduction, and 85 degrees of external rotation. *Id.* at 10.

- Between June 21 - August 23, 2019, Petitioner attended a total of eight physical therapy sessions. Ex. 5 at 13-20. Petitioner was discharged from PT on September 18, 2019, after meeting all of her goals. Ex. 10 at 29.

- On December 3, 2019, Petitioner returned to Dr. Murray for a follow-up visit. Ex. 5 at 24. Petitioner noted that although her range of motion and strength were improving, her left shoulder pain remained moderate and worsening. *Id.* On exam, Petitioner had 160 degrees

5

of forward flexion. *Id.* Dr. Murray opined that "immunization was injected into the infraspinatus tendon." *Id.*

- On October 28, 2020, Petitioner presented to her OBGYN for an annual exam. Ex. 12 at 10. During that visit, Petitioner noted left arm pain and weakness since the flu vaccine in "January 2019." *Id.*

## B. Declarations

Petitioner and her mother, Christine Fox, executed signed and sworn declarations describing the onset and sequela of Petitioner's shoulder injury. Ex. 6; Ex. 14; Ex. 15. They describe the onset of Petitioner's pain as immediately following her September 7, 2018 flu vaccine. Ex. 14 at 2; Ex. 15 at 2.

Petitioner's first declaration is dated February 19, 2021. *See* Ex. 6. In it, she states that she presented to her PCP with complaints of arm pain "following the vaccination." *Id.* at 2. She told the provider that she got a flu shot at her last visit and had not been able to move her arm since. *Id.* She then discusses her May 13, 2019 visit with Dr. Murray. *Id.* (She does not provide a reason for the eight-month treatment gap in this declaration, however). She also alleges that she continues to suffer symptoms (left arm pain and stiffness) as a result of her SIRVA injury. *Id.* at 3. She states that she has suffered and will continue to suffer great physical, mental, and emotional pain and suffering. *Id.* at 4. And her "ability to carry on life's activities has been and will be permanently and severely curtailed." *Id.*

Petitioner filed a supplemental declaration on June 12, 2023. *See* Ex. 14. She contends in it that the nurse injected the flu vaccine higher up on her left arm than she had experienced in the past, and she immediately felt an uncomfortable sensation. *Id.* at 3. She states that a dull throbbing pain started immediately and developed into a sharp stabbing pain over the next few hours. *Id.* She assumed the pain would subside within 2 days, but it did not. *Id.* She claims she had no range of motion at all for the first two weeks and was in excruciating pain. *Id.* She had difficulty commuting to school and could not lift a plate with her left arm when trying to put dishes away. *Id.* She explained that she had never experienced this type of pain from a vaccine and was quite concerned, so she scheduled an appointment with her PCP on September 27, 2018. *Id.*

Petitioner then explains her eight-month gap in treatment. She states that she continued to have pain and limited range of motion in her left shoulder but did her best to tolerate the discomfort because she was very busy with her senior year of college. Ex. 14 at 4. She was commuting 2 hours per day to school and told herself she would focus on her health "when [she] had time." *Id.* She recalls having continuous shoulder pain over her holiday break, and states that she struggled to be happy and engaged during this time. *Id.* at 5. She continued to hope her shoulder pain would resolve with time – but it did not. *Id.* Her shoulder pain never went away during the first half of

2019, and by May 2019, she "had no choice but to seek care for [her] shoulder." *Id.* After months of doctors visits and physical therapy, her pain decreased. *Id.* The last time Petitioner experienced shoulder pain was in late 2020. *Id.* at 7.

Petitioner's mother, Christine Fox, filed a declaration dated June 7, 2023. *See* Ex. 15. She states that Petitioner was living in her home at the time she received the flu vaccine. *Id.* at 1. She states that Petitioner complained of left shoulder pain after she received the vaccine, but she told Petitioner that it would go away within a few days. *Id.* Ms. Fox explains that Petitioner continued to complain of shoulder pain and limited mobility after the vaccine. *Id.* She observed that Petitioner could not raise her left arm without being in extreme pain in the weeks following vaccination. *Id.* After Petitioner had dealt with shoulder pain for several months, Ms. Fox encouraged her to seek medical care. *Id.* at 2. Petitioner's shoulder pain subsided as the months went on, but Ms. Fox recalls Petitioner experiencing shoulder pain for the "next year or so." *Id.*

## IV.    Findings of Fact

### A. Onset

The first disputed issue to be resolved is whether Petitioner's first post-vaccination symptom or manifestation of onset (specifically pain) of her shoulder injury occurred within 48 hours of her flu vaccination as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(a)(XIV)(B) (seasonal influenza vaccines); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI). Based upon a review of the entire record, and for the reasons set forth below, I find that it more likely than not did.

Respondent accurately observes that when Petitioner first complained of shoulder pain on September 27, 2018 (less than three weeks after vaccination), she reported left arm pain since receiving the flu vaccine "last week," and that the pain had been "occurring [in a] persistent pattern for 1 week." Opp. at 5; Ex. 2 at 30. Respondent argues that this places the onset of Petitioner's shoulder pain on approximately September 20, 2018, two weeks post-vaccination. Opp. at 5.

However, other record evidence supports a proper Table onset – and it is sufficient to preponderate against Respondent's proposed onset. Thus, in the same record from the aforementioned September 27th visit, Petitioner also told her PCP that she received the flu vaccine at her last visit but had not been able to move her arm "since then." Ex. 2 at 30. This reasonably links her symptoms to the vaccination – and I have often found in other cases that use of ambiguous terms like "since" can fairly be construed in most cases to mean very close-in-time to vaccination. *See Lutz v. Sec'y of Health & Hum. Servs.*, No. 20-1553V, 2022 WL 17820779, at *3 (Fed. Cl. Spec. Mstr. Nov. 15, 2022) (finding petitioner had established 48-hour onset because he claimed

his shoulder had been hurting "since" he got the flu shot and "'since' implies an immediate pain onset"). And to the extent there is evidence that Petitioner's pain complaints progressed over time, and/or were intermittent but then became more constant, this is consistent with Petitioner's reporting of a "persistent pattern" of pain (and in any event SIRVAs are not dependent on a finding of *constant* pain).

Later records corroborate a Table-consistent onset. When Petitioner next sought treatment, albeit many months later, she reported an immediate onset of shoulder pain following vaccination. *See* Ex. 11 at 3-4. According to the medical records from May 13, 2019, Petitioner told Dr. Murray that she had excruciating pain and limited motion of her shoulder "immediately after receiving the flu shot." *Id.* at 3. And Petitioner clearly stated at this time that the pain in her left shoulder had been present "*since* receiving the flu shot." *Id.* (emphasis added). Thereafter, Petitioner continued to associate the pain with onset close-in-time to vaccination. *See* Ex. 11 at 3 ("She states that immediately after the immunization, she had excruciating pain and limited range of motion in her shoulder"); Ex. 2 at 39 (Petitioner reported to Dr. Dua with complaints of left shoulder pain that "began on September 7, 2018, after the flu shot"); Ex. 5 at 9 (At her PT intake, Petitioner reported that she received a flu vaccine in September 2018 and experienced shoulder pain "that night").

The sworn statements submitted in this case corroborate these medical records, and confirm that Petitioner likely experienced pain within 48 hours of vaccination. In Petitioner's second declaration, she claims she experienced a dull throbbing pain and sharp stabbing pain in the hours immediately following vaccination. Ex. 14 at 3. In Ms. Fox's declaration, she recalls Petitioner complaining of shoulder pain after she received the vaccine. Ex. 15 at 1. She told Petitioner that it would "go away within a few days" – but it did not. *Id.*

Based on the record as a whole, I find that Petitioner has established the onset of her injury likely occurred within 48 hours of her vaccination.

## B. Severity

The second issue to be resolved is whether Petitioner has demonstrated that she suffered "residual effects or complications of" the injury alleged injury "for more than six months after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i).

As Respondent points out, there is an eight-month temporal gap in Petitioner's treatment for her left shoulder symptoms – between September 27, 2018 and May 13, 2019. Opp. at 5. Respondent also observes that Petitioner did not report shoulder pain to the few medical treatment providers she saw in the interim time period. *Id.*

Respondent's contentions have merit, but are overcome by a review of the record in its totality. That record demonstrates that Petitioner likely immediately experienced post-vaccination pain, and then consistently reported the onset of her shoulder pain as following her vaccination, including at her May 13, 2019 appointment (the second treatment instance after the gap). Ex. 11 at 3-4.

Moreover, the eight-month gap in Petitioner's treatment for her shoulder is at least partially explained by the fact that she was a senior in college, juggling a demanding schedule and a two-hour daily commute. Ex. 14 at 4. Respondent notes that Petitioner sought medical care for other issues during this gap, suggesting that she would have sought treatment for her shoulder if she had been experiencing continuous shoulder pain. Opp. at 6. But the two medical issues that Petitioner experienced during this timeframe (a sprained ankle and an upper respiratory infection) required immediate medical attention, so I do not deem them to have been occasions for treatment of shoulder issues as well. *See* Ex. 3 at 32; Ex. 2 at 33-35.

Petitioner's shoulder injury, while painful and limiting, otherwise did not *require* immediate medical attention. As Petitioner explains in her second declaration, she did not seek treatment for several months because she continued to hope that her shoulder pain would resolve with time. Ex 14 at 5. Unfortunately, it did not, so Petitioner "had no choice but to seek care for [her] shoulder in May 2019." *Id.*

Over the following months, Petitioner underwent EMGs and MRIs. Ex. 2 at 40. She met with a pain management specialist and an orthopedist (who attributed her injury to the flu vaccine on several occasions). *See* Ex. 2 at 39; *see e.g.*, Ex. 5 at 24 ("I suspect her immunization was injected into the infraspinatus tendon"). Between June and August 2019, Petitioner completed eight physical therapy sessions and was discharged in September 2019, one year after her vaccination. Ex. 5 at 13-20; Ex. 10 at 29.

Accordingly, based on the record as a whole, there is preponderant evidence that Petitioner's shoulder injury and residual effects thereof persisted for more than six months, and therefore severity is established. (I note, however, that the lengthy treatment gap is evidence that Petitioner's SIRVA was manageable without medical intervention for a significant period of time – and therefore any pain and suffering sum demanded by Petitioner *must* take this into account).

### C. Other Table Requirements and Entitlement

Petitioner has established all other requirements for a Table SIRVA claim. The vaccine administration record reflects the administration site as the left deltoid. Sections 11(c)(1)(A) and (B)(i); Ex. 2 at 26-28. There is no history of shoulder pain, inflammation, or dysfunction that would explain the post-vaccination injury. 42 C.F.R. § 100.3(c)(10)(i). There is not preponderant

evidence of another condition that would explain the symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Petitioner has not pursued a civil action or other compensation. Section 11(c)(1)(E); Ex. 13. Thus, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## Conclusion

Based on the entire record, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation. A Damages Order will be issued shortly.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master